HOLLAND & HART LLP
Gregory M. Saylin (SBN 185328)
gmsaylin@hollandhart.com
222 South Main, Suite 2200
Salt Lake City, UT 84101
Telephone: 801.799.5800

HOLLAND & HART LLP
Emily J. Cross (SBN 313089)
ejcross@hollandhart.com
401 North 31st Street, Suite 1500
Billings, MT 59101
Telephone: 406.896.4617

*Attorneys for Plaintiff Halston Thayer*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Halston Thayer,<br><br>　　　　Plaintiff,<br>　v.<br><br>Matt Furie; Chain/Saw LLC; and PegzDAO,<br><br>　　　　Defendants. | Case No. 2:22-cv-01640<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Halston Thayer ("Plaintiff"), by and through his attorneys, Holland & Hart LLP, hereby files this Complaint and Demand for Jury Trial against Defendants Matt Furie, Chain/Saw LLC, and PegzDAO[1] (collectively, "Defendants"), as follows:

---

[1] A DAO, or "decentralized autonomous organization," is "an organization represented by rules encoded as a transparent computer program, controlled by the organization members, and not influenced by a central government." Because "the rules are embedded into the code, no managers are needed, thus removing any

1
COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

This action arises from Defendants' unlawful, unfair, and fraudulent business practices, which includes their unfair, deceptive, untrue, and misleading advertising and wrongful actions with respect to an auction for a particular non-fungible token ("NFT") that led Plaintiff and others to grossly overbid on the NFT. Plaintiff therefore brings this action for fraudulent inducement, intentional and negligent misrepresentation, unfair competition and unlawful business acts and practices, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

## PARTIES

1. Plaintiff is an individual residing in Las Vegas, Nevada.

2. Upon information and belief, Defendant Matt Furie ("Furie") is an individual residing in Los Osos, California. Furie is a popular cryptoartist who is well known to be located and doing business in California.

3. Upon information and belief, Defendant Chain/Saw LLC ("Chain/Saw") is a web-based company registered in Delaware and owned and/or operated by Furie from his resident state of California and Frank Musarra from his resident state of New York.

4. Upon information and belief, Defendant PegzDAO ("Pegz") is a web-based DAO with its principal place of business in California that is owned and operated by Furie and/or Chain/Saw. The purpose of Pegz is to feature and sell Furie's cryptoart, which Furie creates in his resident state of California.

---

bureaucracy or hierarchy hurdles." *What Are DAOs And Why You Should Pay Attention*, Cathy Hackl, FORBES, June 1, 2021, available at https://www.forbes.com/sites/cathyhackl/2021/06/01/what-are-daos-and-why-you-should-pay-attention/?sh=61d61b7b7305.

5. Upon information and belief, Defendants are agents of one another who have acted and continue to act on each other's behalf with respect to the allegations herein.

6. Defendants conspired together to facilitate and conduct an auction in October 2021 of a purportedly "rare" and "unique" NFT by using Furie's name and reputation to widely advertise the auction; by featuring Furie's artwork in the NFT that was auctioned; by utilizing Pegz to store the NFT being auctioned as well as 99 other NFTs identical to the auctioned NFT; and by hosting the October 2021 auction on the Chain/Saw website, featuring and representing a connection with well-known California cryptoartist, Furie.

7. Defendants further conspired and committed wrongful conduct by engaging in a scheme to artificially inflate the value of the Pepe NFTs by which they advertised the auctioned NFT as the only one of the existing 100 that would be auctioned—promising that the remaining 99 would be withheld from circulation indefinitely—in order to increase the bid amount, even though they fully intended to distribute 46 identical NFTs for free almost immediately after the close of the October 2021 auction.

8. As a result of Defendants' conspiracy and wrongful conduct, Plaintiff suffered damages in the amount of more than $507,084.00 when the value of the NFT he purchased from the auction for $537,084.00 plunged to less than $30,000.00 upon Defendants' disbursement of 46 identical Pepe NFTs for free.

**JURISDICTION AND VENUE**

9. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

10. Upon information and belief, this Court has personal jurisdiction over Furie because he is a resident of California, the forum state.

11. This Court has personal jurisdiction over Pegz because, upon information and belief, its principal place of business is located in California; it is owned and/or operated, at least in part, by Furie, who resides in California; and it exclusively features cryptoart created in California by Furie.

12. This Court has jurisdiction over Pegz and Chain/Saw because those Defendants conspired with Furie, who resides in California, to organize, advertise, host, and profit from an auction of the NFT that was, upon information and belief, facilitated and operated by Furie from California.

13. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because, per the preceding allegations in this Complaint, a substantial portion the events giving rise to Plaintiff's claims occurred within the Central District of the State of California and because Defendant Furie resides in Los Osos, California, which is located within the Western Division of the Central District.

## GENERAL ALLEGATIONS

14. Upon information and belief, Furie created and debuted "Pepe the Frog" in or about 2005 as a character in Furie's *Boy's Club* web comic.[2] Over the course of the next decade, Pepe the Frog and his catchphrase, "feels good, man," went viral and became the subject of one of the internet's most popular memes.[3]

15. Upon information and belief, beginning in 2016, so-called "rare Pepes," a type of cryptoart, began circulating the internet. In October 2021, a rare

---

[2] *See 4chan's Pepe the Frog is bigger than ever—and his creator feels good, man*, Imad Khan, DAILY DOT, April 12, 2015, available at https://www.dailydot.com/unclick/4chan-pepe-the-frog-renaissance/.

[3] *See Tumblr's Biggest Meme of 2015 Was Pepe the Frog*, Jay Hathaway, INTELLIGENCER, December 9, 2015, available at https://nymag.com/intelligencer/2015/12/tumblr-was-here-for-pepe-the-frog-in-2015.html.

Pepe NFT called PEPENOPOULOS was auctioned off by Sotheby's for $3.6 million.[4]

16. According to the "About" page on Chain/Saw's website,[5] it is a marketplace for NFTs that was created in 2021.

17. According to the "About" page on Pegz's website,[6] "PEGZ is a series of 100 unique collectables, each one of a kind and drawn digitally by Matt Furie," the artist who "single-handledly [sic] spawned the most iconic internet creature of all time, Pepe the Frog."

18. The FAQ on the websites for both Chain/Saw and Pegz explain that the NFTs available for purchase "are ***unique assets*** that live on the Ethereum blockchain. . . . When you purchase an NFT artwork, you are owning a unique contract attributing both the creator and collectors of said artwork." (emphasis added).

19. On or about October 5, 2021, Furie, Pegz, and/or Chain/Saw began advertising an auction of "Matt Furie's FEELSGOODMAN Rare Pepe Card" NFT (the "Pepe NFT") online at rarepepe.chainsaw.fun.[7] *See* archived webpage,

---

[4] *See Debut Sotheby's 'Metaverse' auction sees record-breaking NFT sales*, Sean Dickens, YAHOO! FINANCE, October 27, 2021, available at https://finance.yahoo.com/news/debut-sotheby-metaverse-auction-sees-102103038.html?guccounter=1&guce_referrer=aHR0cHM6Ly9lbi53aWtpcGVkaWEub3JnLw&guce_referrer_sig=AQAAAD38Keg4gYrk1OCNj_gPOUrLXjwKQeNBk8zcZkM5TqJplIqP3TyqvdgxKZncNk0lXAwkQGt_ntj_JfJzda8x840WaKDt5FBfhBrLRep7tn24EduREu189_ijR6TMG9xl48SMpMbptVv4G45sRji4gEObGW9lOOAb4Umr1ZqfzJFA.

[5] The "About" page on the Chain/Saw website is located at https://www.chainsaw.fun/about.

[6] The "About" page on the Pegz website is located at https://www.pegz.fun/about.

[7] This website remains live as of the filing of this Complaint, and it now states that KlausStortebeker—Plaintiff's username—won the auction for 150ETH, placing his winning bid on October 8, 2022.

attached hereto as **Ex. A**. The Pepe NFT was touted in the advertisement as "a piece of blockchain history, originally minted in 2016." The advertisement explained that 500 of this Pepe NFT were "issued," 400 were "burned" (i.e., destroyed), "99 will remain in the PegzDAO," and only "ONE is being auctioned here." **Ex. A** (all caps in original).

20. On or about October 8, 2021, a Twitter user posted a tweet referencing the auction of the Pepe NFT and stating, "got a buddy gettn 3 from his pegz." *See* Twitter screenshot, attached hereto as **Ex. B**. Pegz responded from its Twitter account, stating that "this is not correct," clarifying that "1 RP card to 1 member of PegzDAO" and the "rest are being held indefinitely," and closing with "happy bidding!" *See* **Ex. B**.

21. Relying on Defendants' representations that only *one* Pepe NFT would be auctioned and the other existing 99 would remain in the PegzDAO "indefinitely," Plaintiff placed a winning bid on the Pepe NFT for 150 ethereum ("ETH"), which was equivalent to $537,084.00 when Plaintiff placed his bid on October 8, 2021.

22. Despite Defendants' previous statements and repeated representations that the NFT was a "rare Pepe" and "unique asset,"—i.e., a one-of-a-kind NFT— on October 24, 2021, Defendants released 46 of the 99 remaining Pepe NFTs, significantly devaluing Plaintiff's Pepe NFT to less than $30,000.00, hundreds of thousands of dollars less than what he paid for this purportedly "unique asset." Upon information and belief, those 46 NFTs were given away for free.

23. In a letter to Defendants dated February 4, 2022, attached hereto as **Ex. C**, Plaintiff sought to rescind the parties' contract by tendering his Pepe NFT back to Defendants and demanding in return the 150ETH ($537,084.00) he paid at the October 2021 auction. Defendants rejected Plaintiff's request for rescission in a letter dated March 10, 2022.

## FIRST CLAIM FOR RELIEF

### (FRAUDULENT INDUCEMENT AGAINST ALL DEFENDANTS)

24. Plaintiff restates all preceding allegations as though set forth fully herein.

25. Defendants advertised that only one of the 100 Pepe NFTs remaining in existence would be sold at the October 2021 auction, and the other 99 Pepe NFTs would "remain in the PegzDAO." Pegz further reiterated this during the October 2021 auction when it tweeted that only "1 RP card" would be auctioned, and the "rest are being held indefinitely." Defendants made these representations with the knowledge that they were false because Defendants always planned to release at least 46 of the remaining 99 Pepe NFTs for free, and indeed did so days after Plaintiff won the auction.

26. Defendants intended to deceive and induce the reliance of potential bidders—like Plaintiff—on the purported rarity of the one Pepe NFT being auctioned in order to artificially inflate the ultimate sale amount.

27. Plaintiff justifiably relied upon the knowingly false representations of Defendants that only one Pepe NFT would be sold and the rest would be "held indefinitely" in the PegzDAO because he believed the rarity of only one Pepe NFT in circulation would render it far more valuable than the 150ETH ($537,084.00) he paid for it.

28. Defendants' false representations resulted in damages to Plaintiff because the Pepe NFT he purchased is now worth less than $30,000.00 due to the free giveaway of 46 of the 99 Pepe NFTs that Defendants stated would be "held indefinitely" in the PegzDAO, leading to an immediate loss to Plaintiff of more than $507,084.00.

29. Plaintiff therefore seeks to rescind the parties' contract per Cal. Civ. Code § 1689, consistent with Plaintiff's tendering of the auctioned Pepe NFT in the February 4, 2022 letter to Defendants and demanding in exchange a full refund

of the $537,084.00 purchase price.  In the alternative, Plaintiff seeks money damages equivalent to the total loss in value of the Pepe NFT resulting from the wrongful actions of Furie, Pegz, and Chain/Saw.  Plaintiff further seeks punitive damages for the oppressive, fraudulent, and/or malicious nature of Defendants' conduct.

## SECOND CLAIM FOR RELIEF
### (INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS)

30. Plaintiff restates all preceding allegations as though set forth fully herein.

31. Defendants misrepresented in their October 2021 advertisement for the auction of the Pepe NFT purchased by Plaintiff that it was the only "ONE . . . being auctioned" and that the other existing "99 [would] remain in the PegzDAO." Pegz further reiterated this during the October 2021 auction when it tweeted that only "1 RP card" would be auctioned, and the "rest are being held indefinitely." The falsity of these statements was made evident when, on October 24, 2021, Defendants gave away for free 46 of the 99 remaining NFTs that were purportedly going to "remain in the PegzDAO."

32. Defendants knew their statements in the October 2021 advertisement were false at the time they were made because they always intended to give away at least 46 of the 99 remaining Pepe NFTs for free.  They made these false and misleading statements in an effort to artificially inflate the price of the Pepe NFT. Indeed, while Plaintiff paid the equivalent of $537,084.00 for the auctioned Pepe NFT—what he reasonably believed reflected the minimum value of the purportedly "rare" Pepe NFT—its value dropped to less than $30,000.00 upon the disbursement of 46 identical Pepe NFTs at no cost to the recipients.

33. Defendants intended to induce the reliance of bidders like Plaintiff— who reasonably understood that the auctioned Pepe NFT would "indefinitely" be the only one in circulation, and therefore a "unique asset" as stated on the

Chain/Saw and Pegz websites—in order to obtain the highest possible price for the auctioned Pepe NFT.

34. Plaintiff actually and justifiably relied upon Defendants' representation that only "ONE" of the 100 Pepe NFTs would be auctioned when he bid the equivalent of $537,084.00 with the understanding that only one would be in circulation, which would render Plaintiff's Pepe NFT a valuable "rare Pepe" potentially worth millions of dollars.

35. Furthermore, based upon Defendants' representation that the auctioned Pepe NFT would be the only one in circulation, Plaintiff had a reasonable belief that the value of the Rare Pepe NFT would match or exceed his bid and would further increase in value over time. Indeed, the one-of-a-kind PEPENOPOULOS NFT sold for $3.6 million that same month. If Defendants had disclosed in their advertisement that they intended to give away nearly half the existing Pepe NFTs for free, Plaintiff would have bid significantly less, if at all.

36. Plaintiff suffered damages in the amount of more than $507,084.00 as a result of Defendants' misrepresentations because he purchased the Pepe NFT for $537,084.00, and it is now worth less than $30,000.00.

37. Plaintiff therefore seeks to rescind the parties' contract per Cal. Civ. Code § 1689, consistent with Plaintiff's tendering of the auctioned Pepe NFT in the February 4, 2022 letter to Defendants and demanding in exchange a full refund of the $537,084.00 purchase price. In the alternative, Plaintiff seeks money damages equivalent to the difference between what he paid for the Pepe NFT and the actual value of the Pepe NFT once Defendants wrongfully released 46 identical Pepe NFTs for free. Plaintiff further seeks punitive damages for the oppressive, fraudulent, and/or malicious nature of Defendants' conduct.

## THIRD CLAIM FOR RELIEF

### (NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS)

38. Plaintiff restates all preceding allegations as though set forth fully herein.

39. As stated in Plaintiff's Second Claim for Relief, Defendants misrepresented in their October 2021 advertisement for the auction of the Pepe NFT purchased by Plaintiff that it was the only "ONE . . . being auctioned" and that the other existing "99 [would] remain in the PegzDAO." Pegz further reiterated this during the October 2021 auction when it tweeted that only "1 RP card" would be auctioned, and the "rest are being held indefinitely." The falsity of these statements was made evident when, on October 24, 2021, Defendants gave away 46 of the 99 remaining Pepe NFTs that were supposed to be "remain in the PegzDAO."

40. If Defendants believed their statements in the October 2021 advertisement were true, they had no reasonable grounds for such a belief because they made those statements in an effort to artificially inflate the price of the Pepe NFT. Indeed, while Plaintiff paid the equivalent of $537,084.00 for the auctioned Pepe NFT, its value dropped to less than $30,000.00 upon the disbursement of 46 of the remaining Pepe NFTs at no cost to the recipients.

41. Defendants intended to induce the reliance of bidders like Plaintiff—who reasonably understood that the auctioned Pepe NFT would "indefinitely" be the only one in circulation, and therefore a "unique asset" as stated on the Chain/Saw and Pegz websites—in order to obtain the highest possible price at auction.

42. Plaintiff actually and justifiably relied upon the representation of Defendants that only "ONE" of the existing Pepe NFTs would be auctioned and that the "99 [would] remain in the PegzDAO" when he bid 150ETH ($537,084.00) with the understanding that only one Pepe NFT would be in circulation.

43. Furthermore, based upon Defendants' representations suggesting that the auctioned Pepe NFT would be the only one in circulation, Plaintiff had a reasonable belief that the value of the Pepe NFT would match and likely far exceed his bid. Indeed, the one-of-a-kind PEPENOPOULOS NFT sold for $3.6 million that same month. If Defendants had disclosed in their advertisements that they intended to give away nearly half the existing Pepe NFTs for free, Plaintiff would have bid significantly less, if at all.

44. Plaintiff suffered damages in the amount of more than $507,084.00 as a result of Defendants' misrepresentations because the Pepe NFT he purchased for $537,084.00 is now worth less than $30,000.00.

45. Plaintiff therefore seeks money damages equivalent to the difference between what he paid for the Pepe NFT and the actual value of the Pepe NFT once Defendants wrongfully released 46 identical Pepe NFTs for free.

## FOURTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200 *ET SEQ.* AGAINST ALL DEFENDANTS)

46. Plaintiff restates all preceding allegations as though set forth fully herein.

47. California's Unfair Competition Law ("UCL") prohibits persons from engaging in unfair competition and allows "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" to sue for injunctive and restitutionary relief. Cal. Bus. & Prof. Code §§ 17203, 17204.

48. "Unfair competition" is defined in the UCL as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200.

49. Defendants have engaged in unfair competition by utilizing unfair, deceptive, untrue, or misleading advertising as part of a scheme to artificially

inflate the price at the October 2021 auction of the Pepe NFT. Defendants specifically did this by repeatedly stating that the NFT being auctioned was a "rare Pepe" and a "unique asset," i.e. a one-of-a-kind piece of cryptoart. Those statements proved to be blatantly false when Defendants gave away 46 of the remaining 99 Pepe NFTs for free, rendering Plaintiff's Pepe NFT anything but "rare" or "unique," and devaluing it by over $507,084.00.

50. Plaintiff is a person who has suffered injury in fact and has lost money or property as a result of the unfair competition engaged in by Defendants because he paid approximately $537,084.00 for an asset that is now worth less than $30,000.00 as a result of Defendants' unfair competition.

51. Plaintiff seeks to obtain restitution of all monies generated as a result of Defendants' unlawful, unfair, and/or fraudulent acts and practices; to enjoin Defendants from releasing any more of the remaining Pepe NFTs that purportedly were to remain indefinitely in the PegzDAO and from otherwise engaging in any further unlawful, unfair, and/or fraudulent acts and practices; and all other relief allowed under California Business & Professions Code §17200.

### FIFTH CLAIM FOR RELIEF

*IN THE ALTERNATIVE*

(VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.* AGAINST ALL DEFENDANTS)

52. Plaintiff restates all preceding allegations as though set forth fully herein.

53. The Consumers Legal Remedies Act makes unlawful certain unfair methods of competition and unfair or deceptive acts or practices, including "[a]dvertising goods or services with intent not to sell them as advertised" and "[r]epresenting that goods or services are of a particular standard, quality, or grade." Cal. Civ. Code § 1770(7), (9).

54. Any consumer who suffers any damages as a result of another person engaging in a "a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to obtain," *inter alia*, actual damages, an injunction, restitution, punitive damages, and any other relief the court deems proper. Cal. Civ. Code § 1780(a).

55. Defendants have engaged in acts declared unlawful by Section 1770, namely by advertising that the Pepe NFT sold at the October 2021 auction would be the only "ONE" of the 100 existing Pepe NFTs auctioned and in circulation as part of a scheme to artificially inflate the price while fully intending to give away 46 of the Pepe NFTs for free shortly thereafter.

56. Defendants further engaged in acts declared unlawful by Section 1770 by falsely representing to the public—including Plaintiff—that the Pepe NFT was a one-of-a-kind "rare Pepe," that is, a "unique asset." The free giveaway of 46 Pepe NFTs rendered the Pepe NFT purchased by Plaintiff anything but "rare" or "unique."

57. Plaintiff has suffered damages as a result of Defendants' use of unlawful methods, acts, and practices because, in reliance upon their false advertising and misrepresentations, he paid approximately $537,084.00 for an asset that is now worth less than $30,000.00.

58. Plaintiff seeks to obtain restitution and disgorgement of all monies generated as a result of Defendants' unlawful, unfair, and/or fraudulent acts and practices; to enjoin Defendants from releasing any more of the remaining Pepe NFTs that purportedly were to remain indefinitely in the PegzDAO and from otherwise engaging in any further unlawful, unfair, and/or fraudulent acts and practices; to be awarded actual damages equivalent to the total loss in value of the Pepe NFT resulting from Defendants' wrongful actions; the imposition of punitive damages for the oppressive, fraudulent, and/or malicious nature of Defendants' conduct; and/or all other relief allowed under Cal. Civ. Code § 1780.

## SIXTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (MISTAKE OF FACT AGAINST ALL DEFENDANTS)

59. Plaintiff restates all preceding allegations as though set forth fully herein.

60. To the extent Plaintiff's reasonable belief that the remaining 99 Pepe NFTs would remain in the PegzDAO indefinitely was a mistake, such a mistake was material to Plaintiff's contract with Defendants.

61. Such a mistake was not the result of any neglect of a legal duty on the part of Plaintiff because it was reasonably based upon Defendants' statements that, of the 100 Pepe NFTs in existence, "99 will remain in the PegzDAO," only "ONE is being auctioned," and the "rest are being held indefinitely."

62. Enforcement of Plaintiff's contract with Defendants as made would be unconscionable because it means that Plaintiff will have paid more than half a million dollars for a piece of cryptoart that is now worth less than $30,000 and will further decline in value if Defendants release more of the remaining Pepe NFTs into circulation.

63. Defendants can easily be returned to the status quo through Plaintiff's return of the Pepe NFT to Defendants and Defendants return to Plaintiff the $537,084.00 he paid.

64. After taking a reasonable amount of time to assess his situation and retain and consult his attorneys, Plaintiff gave Defendants prompt notice of his election to rescind the parties' contract and offered to restore to Defendants the Pepe NFT in return for his payment of $537,084.00.  One month after receiving Plaintiff's notice of his election to rescind, Defendants refused to accept the Pepe NFT or refund any of the $537,084.00 that Plaintiff paid for a purportedly "rare" and "unique" Pepe NFT.

65. Plaintiff therefore seeks to rescind the parties' contract per Cal. Civ. Code §§ 1577 and 1689, consistent with Plaintiff's tendering of the auctioned Pepe NFT in the February 4, 2022 letter to Defendants and demanding in exchange a full refund of the $537,084.00 purchase price.

## SEVENTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)[8]

66. Plaintiff restates all preceding allegations as though set forth fully herein.

67. The parties entered into a valid, enforceable contract when Defendants agreed to produce a single Pepe NFT (holding the remaining 99 in the PegzDAO indefinitely), and Plaintiff agreed to pay 150ETH in exchange. Indeed, Pegz and Chain/Saw have conceded to this by stating the following on their websites: "When you purchase an NFT artwork, you are owning a unique *contract*." (emphasis added).

68. Plaintiff performed all his duties and obligations under the contract by paying Defendants 150ETH.

69. Defendants breached the contract by giving away 46 of the existing Pepe NFTs for free rather than withholding all 99 Pepe NFTs from circulation indefinitely, as promised.

70. As a result of Defendants' breach, Plaintiff bid far more than he otherwise would have (if at all), causing him to incur at least $507,084.00 in damages.

---

[8] Plaintiff acknowledges that he cannot obtain both rescission on his fraud-based claims as well as damages and/or specific performance on his breach of contract claims. He therefore raises such claims and corresponding remedies in the alternative.

71. Plaintiff therefore seeks the following alternative remedies: money damages equivalent to the total loss in value of the Pepe NFT resulting from Defendants' wrongful actions; or an order requiring Defendants to collect the 46 freely released Pepe NFTs and withhold them from circulation indefinitely, as originally promised.

## EIGHTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST FURIE, PEGZ, & CHAIN/SAW)

72. Plaintiff restates all preceding allegations as though set forth fully herein.

73. The implied covenant of good faith and fair dealing is implied by law in every contract.

74. The parties entered into a valid, enforceable contract when Furie, Pegz, & Chain/Saw agreed to produce a single Pepe NFT (holding the remaining 99 in the PegzDAO indefinitely), and Plaintiff agreed to pay 150ETH in exchange. Indeed, Pegz and Chain/Saw have conceded to this by stating the following on their websites: "When you purchase an NFT artwork, you are owning a unique *contract*." (emphasis added).

75. Implied in the Furie, Pegz, & Chain/Saw's agreement to sell Plaintiff the "rare" and "unique" Pepe NFT was that they would act in good faith by withholding the remaining 99 Pepe NFTs from circulation indefinitely in order to maintain the rarity, uniqueness, and ultimate value of the Pepe NFT that Plaintiff purchased.

76. Furie, Pegz, & Chain/Saw engaged in conduct that frustrated Plaintiff's rights to the benefits of the parties' agreement by distributing 46 Pepe NFTs for free, which reduced the value of Plaintiff's Pepe NFT by hundreds of thousands of dollars to less than $30,000.00.

77. As a result of Furie, Pegz, & Chain/Saw's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in the amount of more than $507,084.00.

78. Plaintiff therefore seeks the following alternative remedies: money damages equivalent to the difference between what Plaintiff paid for the Pepe NFT and the actual value of the Pepe NFT resulting from Furie, Pegz, & Chain/Saw's wrongful actions; or an order requiring Furie, Pegz, & Chain/Saw to collect the 46 freely released Pepe NFTs and withhold them from circulation indefinitely, as originally promised.

## NINTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (UNJUST ENRICHMENT AGAINST ALL DEFENDANTS)

79. Plaintiff restates all preceding allegations as though set forth fully herein.

80. Plaintiff conferred a monetary benefit upon Defendants Furie, Pegz, and/or Chain/Saw by paying 150ETH ($537,084.00) for the Pepe NFT auctioned off by Defendants in October 2021, which Plaintiff reasonably believed was valued at or above the amount he paid.

81. Defendants have unjustly retained Plaintiff's $537,084.00 because the Pepe NFT he received in exchange is now worth hundreds of thousands of dollars less than what Plaintiff paid as a result of Furie, Pegz, & Chain/Saw's free release of 46 of the same Pepe NFT.

82. Defendants had possession, custody, and/or control of the remaining 99 Pepe NFTs at the time they engaged in their scheme to artificially inflate the price of the auctioned Pepe NFT, and, upon information and belief, they continue to hold at least 53 of the remaining Pepe NFTs. As a result of Defendants' scheme and the artificially inflated auction price it caused, the value of each of the

remaining Pepe NFTs has increased substantially, to the benefit of Defendants and at the expense of Plaintiff.

83. Plaintiff therefore seeks restitution for the difference between what he paid for the Pepe NFT and the actual value of the Pepe NFT once 46 identical Pepe NFTs were released for free. Alternatively, Plaintiff seeks an order requiring Furie, Pegz, & Chain/Saw to collect the 46 freely released Pepe NFTs and withhold them from circulation, as originally represented.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Halston Thayer requests that the Court enter judgment in his favor as follows:

A. Allowing Plaintiff to rescind the parties' contract per Cal. Civ. Code § 1689, such that Defendants return to Plaintiff the $537,084.00 he paid for the Pepe NFT and Plaintiff return to Defendants the Pepe NFT he purchased; or, in the alternative,

B. Ordering Defendants to pay Plaintiff monetary damages in an amount equivalent to the difference in the amount Plaintiff paid for the Pepe NFT ($537,084.00) and the actual value of the Pepe NFT; or, in the alternative,

C. Ordering Defendants to collect the outstanding 46 Pepe NFTs and to withhold all 99 Pepe NFTs from circulation; or, in the alternative,

D. Ordering that Defendants account for and pay Plaintiff restitution and any additional profits Defendants received as a result of their wrongful conduct, amounting to no less than the difference between what Plaintiff paid for the Pepe NFT ($537,084.00) and the actual value of the Pepe NFT.

WHEREFORE, Plaintiff Halston Thayer further requests that the Court enter judgment in his favor as follows:

E. Imposing punitive damages against Defendants for their oppressive, fraudulent, and/or malicious conduct; and

F. Awarding to Plaintiff reasonable attorneys' fees and costs incurred in bringing this action; and

G. Awarding to Plaintiff pre-judgment and post-judgment interest on all moneys recovered by or awarded to it; and

H. Granting such other and further relief as the Court deems just, equitable, and appropriate.

## JURY DEMAND

Plaintiff Halston Thayer demands a trial by jury of all issues so triable.

Dated: March 12, 2022

HOLLAND & HART LLP

By: */s/ Gregory M. Saylin*
Gregory M. Saylin (SBN 185328)
gmsaylin@hollandhart.com
222 South Main, Suite 2200
Salt Lake City, UT 84101
Telephone: 801.799.5973

Emily J. Cross (SBN 313089)
ejcross@hollandhart.com
401 North 31st Street, Suite 1500
Billings, MT 59101
Telephone: 406.896.4617

*Attorneys for Plaintiff Halston Thayer*

18359533