Jason R. Bartlett (SBN: 214530)
jbartlett@mkwllp.com
MAURIEL KAPOUYTIAN WOODS LLP
450 Sansome Street, Suite 1005
San Francisco, CA 94111
Telephone: (415) 738-6334

Sherman W. Kahn (SBN: 168924)
skahn@mkwllp.com
MAURIEL KAPOUYTIAN WOODS LLP
15 W. 26th Street, 7th Floor
New York, NY 10010
Telephone: (212) 529-5131
Facsimile: (212) 529-5132

*Attorneys for Defendants*
MATT FURIE, CHAIN/SAW LLC,
and PEGZDAO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALSTON THAYER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MATT FURIE, CHAIN/SAW LLC,<br>and PEGZDAO<br><br>　　　　Defendants. | Case No. 2:22-cv-01640<br><br>**ANSWER TO COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## ANSWER

Defendants Matt Furie, Chain/Saw LLC and PegzDAO (collectively, "Defendants"), by their attorneys, hereby file this Answer to the Complaint by Plaintiff Halston Thayer's ("Plaintiff") as follows:

### INTRODUCTION

Defendants deny each and every allegation made in the Introduction.

### PARTIES

1.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 1, and therefore deny them.

2.     Defendants admit that Matt Furie ("Furie") is an individual residing in California and that Furie is an artist. Defendants deny the remainder of the allegations in Paragraph 2.

3.     Defendants admit that Chain/Saw LLC ("Chain/Saw") is a company registered in Delaware and owned and/or operated by Frank Musarra. Defendants deny the remainder of the allegations in Paragraph 3.

4.     The allegations in this paragraph contain legal conclusions and, on that basis, Defendants deny those allegations. Defendants deny any factual allegations in Paragraph 4.

5.     The allegations in this paragraph contain legal conclusions and, on that basis, Defendants deny those allegations. Defendants deny any factual allegations in Paragraph 5.

6.     Defendants admit that (a) the Pepe NFT[1] provides access to the cryptographic private key that controls a cryptographic wallet on the Counterparty

---

[1] The ERC-721 token corresponding to Ethereum contract address 0x82C7a8f707110f5FBb16184A5933E9F78a34c6ab and tokenID 21034271228834581.

platform[2] that holds a non-fungible token minted on the Bitcoin blockchain (the "Plaintiff's XCP Pepe NFT") that corresponds to a digital image of Furie's artwork (such digital image, the "Pepe Artwork"); (b) Chain/Saw conducted an auction of the Pepe NFT (the "Auction") at the URL https://rarepepe.chainsaw.fun/ in October 2021 (the "Auction Site"); (c) immediately before the close of the Auction, PegzDAO controlled 100 unique non-fungible tokens ("NFTs") minted on the Bitcoin blockchain, each of which corresponded to the Pepe Artwork (collectively, the "FEELSGOODMAN NFTs"), which included the Plaintiff's XCP Pepe NFT; and (d) the Auction Site displayed the Pepe Artwork. Defendants deny the remainder of the allegations in Paragraph 6.

7.      Defendants admit that the Auction Site stated, "500 cards issued ⬜, 400 burned 🔥, 99 will remain in the PegzDAO 🎇, and ONE is being auctioned here 👇." Defendants deny the remainder of the allegations in Paragraph 7.

8.      Defendants deny each and every allegation made in Paragraph 8.

## JURISDICTION AND VENUE

9.      Defendants admit that this action purports to arise under 28 U.S.C. § 1332. Defendants deny the remainder of the allegations in Paragraph 9.

10.     Defendants admit that this Court has personal jurisdiction over Furie. To the extent Paragraph 10 contains any other allegations, Defendants deny them.

11.     Defendants deny each and every allegation made in Paragraph 11.

12.     Defendants deny each and every allegation made in Paragraph 12.

13.     Defendants admit that Furie resides within the Western Division of the Central District of California. Defendants deny the remainder of the allegations in Paragraph 13.

---

[2] Counterparty is a peer-to-peer financial platform and distributed, open-source Internet protocol built on top of the Bitcoin blockchain. *See* https://en.wikipedia.org/wiki/Counterparty_(platform).

## GENERAL ALLEGATIONS

14.    Defendants admit that Furie created a character known as "Pepe the Frog," which debuted in a web comic titled *Boy's Club* in or about 2005. Defendants deny the remainder of the allegations in Paragraph 14 and the footnotes.

15.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 15 and the footnote, and therefore deny them.

16.    Defendants admit that the website located at https://www.chainsaw.fun/about includes the statement "[a]s an NFT marketplace, Chain/Saw …" and that Chain/Saw operates such website. Defendants deny the remainder of the allegations in Paragraph 16 and the footnote.

17.    Defendants admit that the website located at https://www.pegz.fun/about includes the statements "PEGZ is a series of 100 unique collectables, each one of a kind and drawn digitally by Matt Furie," and "The PEGZ project … provides a unique opportunity for collectors to get into his vast universe of bizarre mutants and characters, the same universe that single-handedly [sic] spawned the most iconic internet creature of all time, Pepe the Frog." Defendants deny the remainder of the allegations in Paragraph 17 and the footnote.

18.    Defendants admit that the websites located at https://www.pegz.fun/faq and https://www.chainsaw.fun/faq each contain the following statement: "NFTs, or Non Fungible Tokens, are unique assets that live on the Ethereum blockchain. NFTs can be anything—drawings, GIFs, videos, music, text. When you purchase an NFT artwork, you are owning a unique contract attributing both the creator and collectors of said artwork." Defendants deny the remainder of the allegations in Paragraph 18.

19.    Defendants admit that: (a) in October 2021, Chain/Saw advertised the Auction at the Auction Site; (b) such website remained active as of the filing of the Complaint; and (c) such website contains the statements: (i) "SOLD to KlausStortebeker (0x2d8e...7800) for 150 ETH!," (ii) "@0x2d8e...7800 placed a bid

of 150.0 ETH on October 08 @ 3:30 PM," (iii) "Rare Pepe Card, a piece of blockchain history, originally minted in 2016," and (iv) "500 cards issued 🗂, 400 burned 🔥, 99 will remain in the PegzDAO 🕸, and ONE is being auctioned here 👇." Defendants deny the remainder of the allegations in Paragraph 19 and the footnote.

20.     Defendants admit that PegzDAO posted through the @PegzDAO Twitter account the statement referenced in Paragraph 20 as shown in Exhibit B to the Complaint. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 20, and therefore deny them.

21.     Defendants admit that the person controlling the private key for Ethereum address 0x2d8eD3D49F1b31F9f5FC45e8011D3D5b7Fe27800 placed a bid on the Pepe NFT for 150 Ether ("ETH") and that such person won the Auction for the Pepe NFT. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 21, and therefore deny them.

22.     Defendants admit that PegzDAO allocated 46 FEELSGOODMAN NFTs on October 22, 2021. Defendants deny the remainder of the allegations in Paragraph 22.

23.     Defendants admit that in the letter addressed to Defendants dated February 4, 2022, attached as Exhibit C to the Complaint, Plaintiff sought to rescind the contract of sale for the Pepe NFT by tendering the Pepe NFT back to Defendants and demanding that Defendants refund Plaintiff $537,084.00. Defendants admit that Chain/Saw rejected Plaintiff's request for rescission in a letter dated March 10, 2022, attached to this Answer as Exhibit A. Defendants deny the remainder of the allegations in Paragraph 23.

1

## FIRST CLAIM FOR RELIEF

2

## (FRAUDULENT INDUCEMENT AGAINST ALL DEFENDANTS)

3        24.     Defendants repeat and incorporate the admissions and denials of

4    Paragraphs 1 through 23, as if set forth at herein.

5        25.     Defendants admit that the Auction Site contained the statement, "500

6    cards issued 🃏, 400 burned 🔥, 99 will remain in the PegzDAO 🕊, and ONE is

7    being auctioned here 🪙." Defendants admit that PegzDAO posted through the

8    @PegzDAO Twitter account the statement referenced in Paragraph 25 as shown in

9    Exhibit B to the Complaint. Defendants deny the remainder of the allegations in

10   Paragraph 25.

11       26.     Denied.

12       27.     Denied.

13       28.     Denied.

14       29.     Defendants admit that Plaintiff seeks the remedies described in

15   Paragraph 29. Defendants deny the remainder of the allegations in Paragraph 29.

16

## SECOND CLAIM FOR RELIEF

17

## (INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS)

18       30.      Defendants repeat and incorporate the admissions and denials of

19   Paragraphs 1 through 29, as if set forth at herein.

20       31.     Denied.

21       32.     Denied.

22       33.     Denied.

23       34.     Denied.

24       35.     Denied.

25       36.     Denied.

26       37.     Defendants admit that Plaintiff seeks the remedies described in

27   Paragraph 37. Defendants deny the remainder of the allegations in Paragraph 37.

28

**THIRD CLAIM FOR RELIEF**

**(NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS)**

38.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 37, as if set forth at herein.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 45. Defendants deny the remainder of the allegations in Paragraph 45.

**FOURTH CLAIM FOR RELIEF**

***IN THE ALTERNATIVE***

**(VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200 *ET SEQ.* AGAINST ALL DEFENDANTS)**

46.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 45, as if set forth at herein.

47.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 47.

48.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 48.

49.     Denied.

50.     Denied.

51.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 51. Defendants deny the remainder of the allegations in Paragraph 51.

**FIFTH CLAIM FOR RELIEF**

*IN THE ALTERNATIVE*

**(VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.* AGAINST ALL DEFENDANTS)**

52.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 51, as if set forth at herein.

53.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 53.

54.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 54.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 58. Defendants deny the remainder of the allegations in Paragraph 58.

**SIXTH CLAIM FOR RELIEF**

*IN THE ALTERNATIVE*

**(MISTAKE OF FACT AGAINST ALL DEFENDANTS)**

59.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 58, as if set forth at herein.

60.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 60.

61.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 61.

62.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 62.

63.     Denied.

64.     Denied.

65.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 65. Defendants deny the remainder of the allegations in Paragraph 65.

### SEVENTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

66.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 65, as if set forth at herein.

67.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 67.

68.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 68.

69.     Denied.

70.     Denied.

71.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 71. Defendants deny the remainder of the allegations in Paragraph 71.

### EIGHTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST FURIE, PEGZDAO, & CHAIN/SAW)

72.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 71, as if set forth at herein.

73.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 73.

74.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 74.

75.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 75.

76.     Denied.

77.     Denied.

78.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 78. Defendants deny the remainder of the allegations in Paragraph 78.

## NINTH CLAIM FOR RELIEF

### *IN THE ALTERNATIVE*

### (UNJUST ENRICHMENT AGAINST ALL DEFENDANTS)

79.     Defendants repeat and incorporate the admissions and denials of Paragraphs 1 through 78, as if set forth at herein.

80.     The allegations in this paragraph contain legal conclusions to which Defendants have no obligation to respond. Defendants deny any factual allegations contained in Paragraph 80.

81.     Denied.

82.     Defendants admit that immediately before the close of the Auction, PegzDAO controlled 100 unique FEELSGOODMAN NFTs and that PegzDAO continues to control 53 FEELSGOODMAN NFTs. Defendants deny the remainder of the allegations in Paragraph 82.

83.     Defendants admit that Plaintiff seeks the remedies described in Paragraph 83. Defendants deny the remainder of the allegations in Paragraph 83.

**PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to any relief claimed in the Complaint.

**AFFIRMATIVE DEFENSES**

**FACTUAL BACKGROUND**

84.     PegzDAO is a blockchain-based distributed autonomous organization. One becomes a member of the PegzDAO by purchasing certain NFTs featuring artwork by Defendant Furie called "PEGZ" and contributing ETH to the PegzDAO treasury. The PegzDAO can use the treasury resources to support its activities. The market value of ETH in US Dollar terms is volatile. As of May 16, 2022, the value was approximately $2,140 per ETH.

85.     Defendant Chain/Saw is a Delaware limited liability company.  Its business consists primarily of producing and operating online auctions of NFTs for third parties, like PegzDAO.

86.     Defendant Furie created original digital artwork featuring the Pepe the Frog character to be associated with and sold as NFTs and donated the resulting FEELSGOODMAN NFTs to the PegzDAO to be auctioned by Chain/Saw. For reasons having nothing to do with Furie, the Pepe character has become a popular symbol with certain factions of the "Alt-Right" on the Internet. Furie created the Pepe Artwork and donated the resulting FEELSGOODMAN NFTs to the PegzDAO for auction, in part, to wrest the Internet narrative about his character away from such political extremists. NFTs featuring Pepe the Frog are sometimes referred to as "cards" because some NFTs created by fans of the Pepe character resemble trading cards.

87.     The Pepe NFT is unique, the same way a numbered edition of a print is unique, that is, it has a unique number or "tokenID."

88.     On information and belief Plaintiff understood while the Auction was being conducted that the Pepe NFT was a unique instance in an edition of 100 FEELGOODMAN NFTs.

89.     The use of the word "rare" in "Rarepepe" does not connote rarity but refers to a class or type of NFTs featuring variations on the Pepe the Frog character known as "Rarepepes."

90.     On information and belief, Plaintiff understood while the Auction was being conducted that "Rarepepe" does not connote rarity but refers to a class or type of NFTs featuring variations on the Pepe the Frog character known as "Rarepepes."

91.     In October 2021, Chain/Saw auctioned one NFT titled "FEELSGOODMAN," a reference to the original 2005 Furie cartoon in which the Pepe character first appeared. Originally, 500 FEELSGOODMAN NFTs were created ("minted"). In preparation for the Auction, PegzDAO destroyed ("burned") four hundred of the FEELSGOODMAN NFTs. To "burn" an NFT means to transfer the unique cryptographic code associated with the NFT to an inaccessible account ("wallet"), thus making it permanently unavailable to transfer or trade.

92.     Chain/Saw described the Auction in part as follows, "500 cards issued 🃏, 400 burned 🔥, 99 will remain in the PegzDAO 🎇, and ONE is being auctioned here 👇." Chain/Saw never promised to burn the remaining 99 un-auctioned FEELSGOODMAN NFTs or to keep them off the market forever.

93.     As shown in Exhibit B to the Complaint, on or about October 8, 2021, before the Auction was concluded, PegzDAO responded to an online post stating, "got a buddy gettn 3 from his pegz," by posting the following tweet on its Twitter account (@PegzDAO):

"Heads up, this was forwarded to us

This is not correct

1 [FEELSGOODMAN NFT] to 1 member of PegzDAO

rest are being held indefinitely

happy bidding"

94.     Because Plaintiff was aware of the statement "1 [FEELSGOODMAN NFT] to 1 member of PegzDAO" referenced in Paragraph 93 above, and because Plaintiff was not a member of the PegzDAO, Plaintiff understood while the Auction was being conducted that other FEELSGOODMAN NFTs would be allocated to PegzDAO members after the Auction.

95.     Plaintiff claims that he won the Auction by placing a bid of 150 ETH.[3]

96.     On or about October 8, 2021, at 4:39 PM ET, Plaintiff sent a direct message via Twitter from his account @KlauStortebeker to PegzDAO, stating:

"Hey? Just curious and want to confirm. When you say "1 RP card to 1 member of PegzDAO and the rest are held indefinitely" Are you saying that every member of the PegzDAO gets 1 card, or that only 1 card gets raffled off to the DAO members and you hold the other 98. *Wouldn't have changed my bid as I think 150 [ETH] is a good deal*, but curious. Thanks" (Emphasis added.)

97.     Less than ten minutes later, on or about October 8, 2021, at 4:48 PM ET, PegzDAO responded to Plaintiff, stating:

"Hey! Congrats! We're giving 1 RP car to every member of the PegzDAO (right now about 40+ people)… from what I can tell in discord, 80% are saying theyre holding for years minimum So I dont expect any to come on the market anytime soon.. Tbh, I do think you got a good deal, these will rise!"

98.     Plaintiff responded to PegzDAO later that evening, on or about 9:48 PM ET, stating: "I'm assuming that buying Pegz now is too late to get the RP card

---

[3] Plaintiff claims to have placed the successful bid of 150 ETH, which, if true, would mean that Plaintiff controlled the private key for Ethereum address 0x2d8eD3D49F1b31F9f5FC45e8011D3D5b7Fe27800. Defendants have no reason to doubt this claim but cannot confirm whether it is true.

as well? I probably should've researched more before I yolo'd 150, *but still glad I got it either way*…" (Emphasis added.)

99.    *Two weeks after* Plaintiff received responses to his two inquiries following the Auction and failed to raise any objections to the terms of the Auction, on or about October 22, 2021, PegzDAO allocated one FEELSGOODMAN NFT to each of the 46 members of the PegzDAO.

100.    On or about October 24, 2021, two days after PegzDAO allocated the FEELSGOODMAN NFTs to members of the PegzDAO, one of them was traded for a "CryptoPunk" NFT which in turn was sold on October 29, 2021, for 103.03 ETH. At the time of the sale, 103.03 ETH was worth $455,124.72.

101.    Plaintiff did not attempt to notify Defendants that he was dissatisfied with his purchase of the Pepe NFT until February 4, 2022, over three months following the allocation of FEELSGOODMAN NFTs to PegzDAO members and nearly four months after Plaintiff's purchase of the Pepe NFT and after the cryptocurrency and NFT markets had dropped considerably. PegzDAO could have delayed or cancelled the allocation of the FEELSGOODMAN NFTs if it had known that Plaintiff was dissatisfied with his purchase of the Pepe NFT.

102.    On information and belief, immediately following the Auction, Plaintiff was free from duress, menace, undue influence, and disability and, assuming Plaintiff were entitled to rescission, which Defendants deny, aware of his alleged right to rescind.

103.    Plaintiff's delay in seeking rescission was substantially prejudicial to Defendants.

104.    Contrary to Paragraph 23 of the Complaint, in the letter from Plaintiff's counsel of February 4, 2022, Plaintiff's counsel did not demand a refund of the 150 ETH that Plaintiff paid for the Pepe NFT, but instead demanded that Defendants "refund Mr. Plaintiff the value of 150 ETH as of close of October 6, 2021, which is $537,084.00." (Emphasis in original.)

105.   On or about April 13, 2022, after this action was filed, Plaintiff purchased an NFT known as the Nakamoto Rarepepe Card (Series 1, Card 1) (the "Nakamoto Card") in an edition of 300 (three times the number of existing FEELSGOODMAN NFTs) for 70 ETH, or $218,421.00 at the time of purchase.

106.   It is not unusual for NFT prices to fluctuate more than 20% during a three-week period, or even on a single day.

107.   Based upon the above facts, Defendants raise the affirmative defenses below without conceding any matter on which the burden of proof is on Plaintiff.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted against Defendants.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's First, Second, Fourth, and Fifth Causes of Action are barred, in whole or in part, because the Defendants' allegedly false statements were verifiably true while the Auction was being conducted and remain so.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's First, Second, Third, and Fifth Causes of Action are barred, in whole or in part, because Plaintiff's did not rely on Defendants' statements as alleged in Paragraphs 27, 34, 42, and 57 of the Complaint. This lack of reliance is demonstrated by Plaintiff's direct messages to PegzDAO immediately following the Auction, in which he stated: "Are you saying that every member of the PegzDAO gets 1 card, or that only 1 card gets raffled off to the DAO members and you hold the other 98. *Wouldn't have changed my bid as I think 150 is a good deal…*"; and "I probably should've researched more before I yolo'd 150, *but still glad I got it either way…*" (Emphasis added.)

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Third, Fourth, Fifth, Seventh, Eighth and Ninth Causes of Action are barred, in whole or in part, because Plaintiff neither suffered injury or damages

nor lost money or property related to the allegations set forth in the Complaint, as shown by (1) a trade of a FEELSGOODMAN NFT following the allocation of FEELSGOODMAN NFTs to PegzDAO members for a CryptoPunk NFT, which was worth over $455,000 on or about the time of the trade and (2) Plaintiff's purchase of the Nakamoto Card in an edition of three times that of the FEELSGOODMAN NFTs for nearly half the amount Plaintiff paid for the Pepe NFT.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Sixth Causes of Action are barred, in whole or in part, because, assuming Plaintiff were entitled to rescission, which Defendants deny, Plaintiff did not give notice of rescission to Defendants promptly upon discovering the facts which allegedly entitle him to rescind and Plaintiff was free from duress, menace, undue influence and disability and aware of his alleged right to rescind, and such delay was substantially prejudicial to Defendants. Instead, Plaintiff waited to demand rescission until February 4, 2022, over three months following the allocation of FEELSGOODMAN NFTs to PegzDAO members and nearly four months after Plaintiff's purchase of the Pepe NFT.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Sixth Causes of Action are barred, in whole or in part, because, assuming Plaintiff were entitled to rescission, which Defendants deny, Plaintiff did not restore to Defendants everything of value which he had received from Defendants under the contract or offer to restore the same upon condition that the other party do likewise, but instead demanded that Defendants "refund Mr. Thayer … $537,084.00."

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Sixth Causes of Action are barred, in whole or in part, because Plaintiff's consent was not given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of

the party as to whom he rescinds, or of any other party to the contract jointly interested with such party, as required by Cal. Civ. Code § 1689(b)(1). To the contrary, while the Auction was being conducted, Plaintiff was aware that PegzDAO intended to allocate FEELSGOODMAN NFTs to members of the PegzDAO.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's Sixth Cause of Action is barred, in whole or in part, because Plaintiff's consent was not caused by mistake or, in the alternative, any mistake Plaintiff made was caused by Plaintiff's neglect of Plaintiff's legal duty to perform due diligence before making a purchase. Such lack of due diligence is demonstrated by Plaintiff's direct message to PegzDAO immediately following the Auction, in which he stated: "*I probably should've researched more* before I yolo'd 150, but still glad I got it either way…" (Emphasis added.)

**NINTH AFFIRMATIVE DEFENSE**

Each of Plaintiff's causes of action are barred, in whole or in part, under the equitable doctrines of estoppel and/or laches because Plaintiff failed to raise timely objections to the terms of the Auction or request any relief whatsoever after discovering the facts that Plaintiff contends were fraudulently concealed at the time of the Auction.  On the contrary, Plaintiff expressed *satisfaction* with his purchase after learning of such facts.  Defendants reasonably relied on Plaintiff's failure to complain and his expressed satisfaction to their detriment when they proceeded to allocate instances of the FEELSGOODMAN NFTs to the members of the PegzDAO over a week later.  Had Plaintiff raised any such objections, Defendant PegzDAO could have canceled such allocations.

**TENTH AFFIRMATIVE DEFENSE**

Each of Plaintiff's causes of action are barred under the equitable doctrine of unclean hands.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Fifth Claim for Relief under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *Et Seq.* ("CLRA") is barred, *inter alia*, because the NFT purchased by Plaintiff is intangible and therefore not a good or service within the meaning for the CLRA and no participants in the transaction about which Plaintiff complains is a resident of California.

### RESERVATION OF RIGHTS

Defendants reserve the right to assert further defenses as they become evident through discovery or further investigation.

WHEREFORE, Defendants pray for judgment against Plaintiff, and respectfully seeks the entry of an order:

I.      In favor of Defendants and against the Plaintiff;

II.     For an award of Defendants' reasonable attorney's fees and costs; and

III.    For such other relief as the Court deems just and equitable.

### JURY DEMAND

Defendants demand trial by jury of all issues so triable.

Respectfully requested,

Dated:  May 17, 2022              MAURIEL KAPOUYTIAN WOODS LLP

By:     */s/ Jason R. Bartlett*
        Jason R. Bartlett
        Sherman W. Kahn

*Attorneys for Defendants*
MATT FURIE, CHAIN/SAW LLC,
and PEGZDAO